All right, U.S. v. Oba. Oh, okay. May it please the Court, good morning. Mark Blackman on behalf of Mr. Oba. Counsel, good morning. The relevant law in this area is changing so fast that it's hard to know if something you say on Tuesday is still going to be pertinent on Friday. So in this oral argument, what I'd really like to do is focus on what I think are the most fundamental errors that the trial court made in imposing this outside guideline sentence. And I'd like to start off by noting that just last week this Court decided the case of United States v. War, W.A.R.R., we submitted a 28-page letter this morning about that case. I want you to talk a little bit, because half the people in the back row are going like this. Is this better? Yes. All right. Was the Court able to hear my original comments? No, no, that's fine. Keep going. All right. So for this argument, I would like to focus on the most fundamental errors that the trial court made in reaching the outside guideline sentence of 72 months, because I think, regardless of how the law may move in the near future on this issue, those errors are going to be apparent no matter what. And, again- Why don't you tell us a little bit about the case, about 15 seconds, so that the audience knows what you're talking about. It was a charter boat day at sea fishing. Mr. Captainova was the charter boat captain. They had gone quite a ways out to sea to find a school of fish. The day was beautiful when they left. The weather changed while they were away. The Coast Guard closed the bar at Winchester Bay in the afternoon. They came back toward the coast, checking the bar conditions as they proceeded toward shore. As they approached Winchester Bay, there were conflicting reports received by the captain. The Coast Guard told them all along, don't come back here to Winchester Bay. The Coast Guard closed the bar and persisted in keeping the bar closed. And as the vessel reached the vicinity, and it was checking the conditions, and another captain was checking with the Coast Guard to see if they would recheck the bar, the vessel, it has continued to be disputed, but we've discussed in great detail in our briefs, and I would be happy to go over it again if you'd like. You have three minutes out of ten, and we haven't gotten to the legal issues. And what happened, Your Honor, was that the vessel at some point was hit by a wave and capsized, and three of the passengers were lost at sea. And that was the basis of the prosecution, and that was the basis of the plea. Only the captain had the life buoy. Only the captain. There was the passenger. There was one passenger with a jacket on, and there were jackets available. There was, again, evidence in the record that the captain had made clear where the life jackets were. That is disputed, but that was in the record. But here, assuming, just assume for the purposes of this discussion, that the trial court was justified in finding that the underlying conduct was reckless under the guidelines, that would still have only justified a guideline sentence of 41 to 51 months. Everyone agrees with that. And the government's position was that it would recommend 41 months. The question here is whether or not the outside guideline sentence that the Court imposed of 72 months is reasonable. And if you look at your recent decision in War, the Court again reiterates that where the district court decides that an outside guideline sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variance. This does not mean that the district court's discretion is constrained by distance alone. Rather, the extent of the difference is simply a relevant consideration. A major departure should be supported by a more significant justification than a minor one, and once the sentence is selected, the district court must explain it sufficiently to permit meaningful appellate review. And that point about sufficiently explaining it to allow meaningful appellate review is also a point made in the case cited by the government in its 20HA motion, where after the part the government relies on in its letter, the Court goes on to say, when a party raises a specific nonfrivolous argument tethered to a relevant Section 3553a factor in support of a requested sentence, the judge should normally explain why he accepts or rejects the party's position. None of that happened here. What the Court did was double count the recklessness and ultimately, in the second go-round, claimed that Mr. Parker had suffered unusual psychological injury. But, in fact, there was no evidence of record to support that. And if you look at the guidelines and the description of what qualifies for a departure, if that's still relevant, under Dallman it's not clear, but if it is, that there was no evidence that would support that. Conversely, there was much evidence in the record, which the trial court never addressed at all, to show that a departure sentence, if I can use that term, or a sentence outside the guideline range would be unreasonable, was presented and not discussed. The sentences imposed in every other semen manslaughter case in the country was presented to the Court. Those cases were uniformly sentences in the 12-month range, with the exception of the ones that involved alcoholic misconduct. And there was one of those. The trial court didn't mention that in reaching its sentencing decision. The trial court didn't address the defendant's long history of community service. The trial court didn't mention it. Well, the trial court double counted for the multiple losses of life, because that was part of the basic guideline computation. That's why the offense level was 25 less the 3 for acceptance. And then the Court, again, seems to have simply double counted. Now, here, if there's going to be any meaningful requirement that a sentence be reasonable under the guidelines as they are now advisory, the Court must not only explain the rationale for an outside guideline sentence, but it must also be pertinent to the issues. Here, what the Court did, with no explanation, is impose a 72-month sentence where the presumptive advisory guideline was 20, at least 21 months less and 31 months less, I believe, with no explanation that would allow this Court to determine that reasonable discretion had been exercised. And it's clear from the record that that was a decision the Court had made before ever hearing from the defense, which compounds the problem. Because the material in support of the sentence being urged by the defendant was not reviewed by the trial court before the first sentencing proceeding. And at the conclusion of that, the Court advised the parties to be prepared for a sentence above the range, never having heard from the defense. And then when both parties questioned the decision the Court, in fact, announced at the conclusion of the first sentencing proceeding, the Court stuck to that decision by coming up with this extreme psychological injury without any basis in the evidence that the trial court pretty candidly admitted. So I would urge the Court, under the standards of reasonableness that are evolving, to find that this was neither procedurally nor substantively a reasonable decision by the trial court, and to remand for resentencing. I would like to reserve my minute and a half, unless you have questions. All right. May it please the Court. My name is Dwight Holton, and I'm an assistant United States attorney here in the District of Oregon. I litigated the case below. The district court's sentence was both procedurally sound and substantively reasonable, and therefore should be affirmed. You told the district court it should be within the guidelines, right? Yes, Your Honor. That was our recommendation, consistent with the plea agreement. But as Cardi, Zavala, and, in fact, Gall have made clear, the question is not what we would, what I would. No, no. I just wanted to make sure with the government.  That's correct, Your Honor. And you told the judge that this sentence was double the, even the guideline mentioned it, was double the sentence in the Staten Island Ferry case where 11 people were killed. That's correct, Your Honor. This sentence, the sentence of 41 months, would have been double the 18 months in the Staten Island Ferry case. Now, since the Staten Island Ferry case was decided, two things, the guidelines have been amended twice to ratchet up the sentence, so that the sentence that And the defense attorney gave the judge a lot of comparative figures to show that this was a disproportionate sentence. Yes, Your Honor. Although I think that Did the judge ever comment on that? I don't think he expressly commented on it. Did he impliedly comment on it? Well, we rebutted it in our sentencing memo, and the court adopted my arguments. Well, the court didn't say anything, really. Well, the court expressly adopted my arguments, I believe. You really think that the way the judge explains his reasons is to say, I adopt the United States attorney's arguments? Well, beyond that, though, because it didn't adopt them wholesale. Rather, it adopted some of my arguments and included Where did he adopt the argument that this was not disproportionate? You're exactly correct, Your Honor. He didn't do that explicitly. But what was clear to the court from the briefing was that of all the cases cited by But isn't he obligated under the law when it's an outside of guideline sentence and counsel raises reasons to explain expressly why he rejects them? When the defendant raises non-frivolous reasons for a particular sentence, the court is obligated to respond to them. Here, the defendant had three separate opportunities to brief the court. The court considered the briefing. It heard oral argument on three separate occasions. But he didn't respond to this, did he? Well, he gave detailed reasons for his sentences. No, no, no, no. That's not why I asked you whether he gave reasons. The law is that if the defendant makes an argument, raises an issue in a non-guideline sentence and says why that's incorrect and gives an argument like this, that the judge is supposed to explain why he rejects that argument. Judge, the facts and the law with respect to the other sentences are that of all the He could have said that, couldn't he? He certainly could have. But the point is that he is obligated under the law, is he not, to reject the argument and explain why. He's not obligated, I don't think, to respond to every non-frivolous argument. Not every. This was a principle objection. Well, Your Honor. That this was a disparate sentence. It was one of a very long series of arguments. And which ones did he expressly respond to? He responded expressly to defendant's concern as to whether or not he was reckless and as to whether or not the degree of recklessness was an appropriate consideration, as to whether or not psychological harm was an appropriate consideration, and as to whether or not multiple charges. Well, recklessness it was. That argument he settled, no one is now contending that he didn't properly. Well, they might contend he didn't properly. But no one is saying he didn't address recklessness. And he did. He gave him a sentence for recklessness. That would have been a guideline sentence of 41 to 51 months. We're not talking about that. We're talking about the fact that he almost doubled the sentence and did not respond to the objection. That's one of the procedural objections. That's one of them, Your Honor. But I was merely pointing out that of the number of objections raised by the defendant below, the Court did in fact respond to a number of them. Recklessness was one of them. Yeah. And the extreme nature of the recklessness was plainly indicated. He did refer to 3553A, didn't he? The Court expressly referred to 3553A in the sentencing hearing, and in his written statement of reasons on two different occasions, the Court cited two specific 3553A factors. It cited the nature and circumstances of the offense, and it cited the need to reflect the seriousness of the offense, to promote respect to the law, and to impose a just punishment. It's also clear that the Court was moved by the degree of recklessness exhibited here. In this case, the defendant was told at least nine times, without dispute, he was told at least nine times that the bar was not only closed, but it was extremely dangerous. There were waves 14 to 16 feet high breaking in the bar throughout that afternoon. He was told that. Could you tell me where he says any of that? And the stern of the boat was hit by how high a wave? The stern of the boat was hit by a wave that was estimated at 17 feet, Your Honor, which is almost as high as the ceiling. What was the size of this boat? It was a 37-foot charter boat, Your Honor. It was almost half the size of the boat. Can you tell me in his sentencing where he says any of this? Your Honor, the Court repeatedly references the debris of recklessness, citing that the recklessness was proven not just by fair and convincing evidence, but by standard approaching beyond a reasonable doubt. Well, that doesn't say that. It says you proved something. It doesn't say what it is. What did he – where did he explain his sentence? Your Honor, he explained it in a number of places, both on the record on the first day on May 18th, again on the record on June 26th. Tell me what he said on the 18th. On May 18th, he referenced specifically the debris of recklessness, citing the standard by which the weight of the government is proved. And, Your Honor, that can only be relevant because of the debris of the recklessness, and the debris of recklessness far beyond what was contemplated by the guidance. On his May 24th statement of reasons, the Court expressly recognized, expressly or rather addressed, two statutory factors, section 3553a1, the nature and circumstances of the offense, and section 3553a2a, seriousness of the offense, the need to promote respect for law and to impose just punishment. The Court went on to again reference the recklessness and debris of recklessness and went on also to reference the multiple deaths and the psychological injury to Mr. Parker. Well, the multiple deaths are already accounted for, weren't they? Your Honor, the Court heard that argument and rejected it. The Court heard that argument when briefing, and after that, and both on the record and after that, on the June 26th statement of reasons, indicated that the number of deaths warranted going up from the guidelines. And this is a situation similar to Kimbrough, where the Court plainly concluded that the guidelines' consideration for multiple deaths was not sufficient, given the serious recklessness at issue here and the other factors. After all, the recklessness here was compounded by the fact that it was at night, the sun had set over an hour before the accident, the fact that the frigid September water was at 52 degrees, the fact that Mr. Oba endangered the life of others, including not only the passengers but the folks who would have to come out and pluck him out of the water from the United States Coast Guard, his fatigue, which Mr. Oba expressly recognized in his interview with the probation officer. What he said at sentencing in full was the guideline sentence is 22. However, as I'm sure your attorneys have explained to you, the sentencing guideline is merely advisory, so we're not bound. Then his full explanation for the sentence is, under the circumstances of this case, and in light of my finding your conduct was reckless, which is what the guideline sentence is for, the Court is going to upwardly depart. That's it. One sentence, under the circumstances of this case. Now, what the Supreme Court has said is that the defendant is entitled to a full explanation of the reasons. But, Your Honor, that's not all that was said. Respectfully, there was a further sentencing hearing on, that was on May 24th. That was May 18th. That was when he imposed the sentence. Right. No, but the sentence was then imposed on a continued hearing on June 26th. This was back under the old law under Burns and maybe the current law following Irizarry, it's a little bit unclear to me at this point, where the Court was required to give notice of its intent to upwardly depart, and we were concerned, the government was concerned that there had not been satisfactory basis explained for the potential upward departure. So the Court reopened sentencing, and the Court had more to say on June 26th. It went on to say that, notwithstanding the fact that there was a merger within the guidelines that computed a potential advisory sentence below that which the Court reached, considering the fact that three individuals lost their lives based on Mr. Hoba's recklessness, the sentence of 72 months was one that the Court deemed appropriate under section 3553A. And all of that, the fact that it was reckless and three individuals lost their lives is all part of why the guideline sentence. If it hadn't been reckless, if three individuals hadn't lost their lives, that wouldn't have been the guideline sentence. And the Court found that the guidelines did not sufficiently take those factors into account, Your Honor. And that's why it went on also to add about the its factual findings based on what it saw of Mr. Parker testifying, the injury he suffered, the fact that he hasn't been back on the water despite being a waterman all his life. Your Honor, it bought on this case. Kennedy, wasn't there evidence that Hoba never gave a safety briefing which was required? It didn't show passengers where the preservers were stored? Is there anything like that in the judge's sentence? Did he refer to any of those factors? Is that in the evidence? I've run over my time, but if I may answer both questions. The Court does not expressly cite every single factor that went through. No, no, no. I just asked whether he cited what Judge Pedersen talked about. Well, but Judge Pedersen asked a slightly different question, which is whether or not there's evidence of the record of this. Yes, Your Honor. Mr. Parker, who was the only person there who testified, said that no safety briefing was given. No, Your Honor, the Court did not expressly cite that in its sentence. You always say he didn't expressly do anything, which means he didn't do it. But it's all before him, Your Honor. Well, I know. Is that what the Supreme Court said, that they said all you need is to have a good reason in the record? Or did they say the district judge has to explain it? The Court made various – the Government made very specific arguments as to the basis of the recklessness conclusion and the racist for the sentence. Did the Supreme Court talk about what the arguments the Government should make? Or did they say, because of the need for public confidence in our sentencing process, that the judge must explain these things? Or did they say it's enough if it's in the record? The Court adopted both the arguments of the Government, with certain exceptions indicating his care and the care he was taking, as well as the conclusions of the sentence.   But didn't he say something about accepting the Government's statement of facts or the Government's explanation? He did, Your Honor. He adopted that? He did adopt our arguments, Your Honor. Tell me where he said that. We had these great sentencing guidelines for years, and the Supreme Court said they were unconstitutional, right? Yes, Your Honor. Yes, so because of the loss of public confidence. Could you show me in the record where he accepted it? Because he said earlier he accepted part and not other parts. Your Honor, he adopted our arguments. If you could give me just a moment, I'll identify expressly where it was. He adopted the Government's arguments at page 306 of the excerpts of the record, and he went on to expressly exclude one of the arguments we'd made because he didn't think it was factual. Which hearing is that? It was on the May 18th hearing, Your Honor, in Exhibit 7. One second. I can quote it if you like, Your Honor. No, don't find it in the excerpts. It's not in the excerpts. This is when you were recommending a 41-month sentence? We recommended 41 months at all times, yes, Your Honor. And that's when he adopted your views? He adopted our arguments with respect to recklessness and the facts of the case, Your Honor. Right. That it was reckless. I'm not challenging that. That gives you to the guideline, that it was reckless. He adopted your view that it was reckless. Yes, Your Honor. Yes. Thank you. Thank you, Your Honor. Well, the effect of the Supreme Court's decision that the guidelines were unconstitutional, the broad effect of that was that it took the real power of imposing a sentence and the severity of the sentence away from the US attorney's office and gave it back to the district judge, right? That's correct, Your Honor. It took it away from young guys like you and gave it to old people that are supposed to have a little more experience. Can you imagine, Judge? Yes, Your Honor. That's correct. At the bottom line, Your Honor, this case is a total tragedy, total incomplete, and it was totally avoidable. And that's what we respectfully submit makes the sentence reasonable. Thank you, Judge. All right. Thank you. Just to clarify the last discussion about the court's adoption of the government's rationale, ER-306 and that whole adoption related to whether or not the conduct was reckless versus negligent had nothing to do with the guideline sentence decision. It preceded that discussion by weeks. What that portion of the record relates to is the argument over whether the conduct was reckless. And the only time the court expresses any opinion about whose version of the facts it's adopting is there, and it is only on the question of recklessness. None of the arguments related to whether or not it should be an outside the guideline sentence were ever made because the government was committed by a plea agreement not to make such an argument. And in fact, in one of its briefs in this court, it reemphasized that it has to tread carefully because its commitment is to recommend a sentence within the guideline range and at the low end. But the judge doesn't have to follow that recommendation. Of course not. But he has to express the rationale for imposing a sentence to make it both substantively reasonable and procedurally reviewable. And if you look at this record, the Court's already pointed out explicitly in the transcript, the Court never articulated any rationale for the outside guideline sentence. And in fact, the evidence presented that was never addressed at all warranted, if anything, a sentence much closer to what the defense was recommending. And he never articulated a reason for rejecting that. So unless this Court is going to interpret Gall and follow, interpret Cardee to say that whatever the trial judge does is fine, if ever there was a case where the Court did not articulate sufficiently the rationale or provide this Court with an ability to assess the reasonableness of that process, this is the case. So we send it back to him and ask him to give us an explanation. Is that what you want? Well, as we note in our opening brief, because of the way in which the Court proceeded, made it clear before ever, ever reviewing any of the material provided by the defense, but only having heard the live testimony offered by the government at the beginning, at the conclusion of that proceeding, he advised the parties to be prepared for a sentence above the guideline range. In other words, he had made up his mind before he heard the facts or saw the evidence presented by the defendant. And because of that, and because he stuck to that decision, despite information presented, both factual and legal, as he made clear at ER 328, which is the second sentencing proceeding, that he wasn't going to change his decision. We believe that the case should be remanded to a different judge for re-sentence. Where does he say that? I'm not going to change my decision. It's at 328 of the excerpts of record. He says, I've read the brief submitted by Mr. Oba as far as his objections to the Court's upward departure. Again, people using language that may or may not be relevant anymore. For the reasons stated in the findings, reasons of the court. The court still believes that notwithstanding the written objections and oral arguments by Mr. Ransford, that this is an appropriate case for an upper departure, notwithstanding the fact that there was a merger within the guidelines and computed a potential advisory sentence below that which the court reached. Considering the fact that three individuals lost their lives based on Mr. Oba's recklessness, a sentence of 72 months was one that the court deemed to be appropriate. It's, he hasn't changed at all. And, in fact, only reiterates again the very reasons captured in the original guideline calculation that suggested or advised a sentence of 41 to 51 months. So it's, he only is emphasizing it. And he may not change his mind again if it's in fact, but I don't understand why the, if he says I'm very brief, it hasn't changed my mind, where that shows that he's incapable of imposing a fairer sentence. I realize it's an unusual request and I, it's rare that we do it. And I, we understand that, Your Honor. It's also rare to have a record where the court has sort of indicated in his mind before he heard the evidence, but I understand, I understand. Okay. Thank you very much. Thank you. We'll go to number three now.
judges: Goodwin, Pregerson, Reinhardt